# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONICA MARCHEGIANI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 3:14-CV-568 |
| | : | |
| AETNA LIFE INS. CO. and | : | JUDGE ROBERT D. MARIANI |
| URS FEDERAL SERVICES, | : | |
| Defendants. | : | FILED ELECTRONICALLY |
| | : | |

## DEFENDANTS' RESPONSE
## TO PLAINTIFF'S CONCISE STATEMENT OF FACTS

Defendant Aetna Life Insurance Company (hereinafter, "ALIC" and/or "Aetna") and URS Federal Services ("URS"), by and through their undersigned attorneys, pursuant to Local Rule 56.1, respectfully submits this Response to Plaintiff's Concise Statement of Facts (Doc. 24-1).

1.   Admitted. *See also* URS Federal Services and Aetna Life Insurance Company's Concise Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment (Doc. 27)("Defendants' Statement") at ¶ 1; Aetna Life Insurance Company's Answer with Affirmative Defenses to Plaintiff's Amended Complaint (Doc. 16)("Aetna Answer") at ¶ 12; URS Federal Services Answer with Affirmative Defenses to Plaintiff's Amended Complaint (Doc. 15) ("URS Answer") at ¶ 12.

2. Disputed as stated. *Aetna did not "provide short term disability benefits" for covered eligible employees of URS. URS provided short term disability benefits through its URS Federal Support Services VEBA Trust Welfare Benefits Plan (the "Plan") which was a self-funded Plan.* See Defendants' Statement at ¶¶ 2 – 7.

3. Disputed. *URS provided short term disability benefits through its URS Federal Support Services VEBA Trust Welfare Benefits Plan (the "Plan") which was a self-funded Plan.* See Defendants' Statement at ¶¶ 2 – 7.

4. Undisputed. See Defendants' Statement at ¶ 9.

5. Undisputed but with clarification that the definition applies only to short term disability benefits.

6. Undisputed but with clarification as to the precise language contained in the medical records cited by Plaintiff. *Plaintiff was hospitalized with "acute encephalitis with severe mental status changes" on December 18, 2012 and upon discharge on December 22, 2012, it was determined that Plaintiff was "believed to have sustained a nonspecific viral encephalistis which has either respond [sic] to treatment or to manifestation of her immune systems defenses. At this point the patient is stable for discharge.* See Aetna 388.

7. Undisputed. See Defendants' Statement at ¶ 10.

8. Undisputed. See Defendants' Statement at ¶ 11.

2

9. Undisputed but with clarification. *See* Defendants' Statement at ¶¶ 12 – 14. *Aetna's recertification was, in part, based on the mistaken belief that Plaintiff's own occupation was that of a financial accountant.* *Id.* at Aetna 64 – 67.

10. Undisputed with clarification. *See* Defendants' Statement at ¶¶ 15 – 16; 18. Aetna made several requests to Dr. Michael Raymond, Plaintiff's psychologist to whom Dr. McCall referred Plaintiff for a neuropsychological examination; Dr. Raymond did not respond or otherwise provide the requested medical records until April 11, 2013. *See* Aetna Statement at ¶¶15 – 18, 24.

11. Undisputed with clarification. *See* Defendants' Statement at ¶¶ 19 – 28. *Stated differently, Aetna terminated Plaintiff short term ("STD") benefits effective May 3, 2013.* *Id.*

12. Undisputed. *See* Defendants' Statement at ¶¶ 31 – 35.

13. Disputed, in part, as stated. Defendants do not dispute Aetna terminated Plaintiff's STD benefits prior to the end of the benefit period. *However, Aetna believes the calculation is 43 days*.

14. Disputed. *While Aetna admits it sought the opinion of a peer review consultant, its denial was based on several more substantial factors than just the peer reviewer's opinion.* *See* Defendants' Statement at ¶¶ 31 – 35.

15. Disputed as stated. *Although Aetna does not dispute Plaintiff's timely filing of an appeal, Aetna denies it communicated such a conclusion in its correspondence and further pleads that the correspondence was June 3, 2013, not June 13, 2013. See Defendants' Statement at ¶¶ 36 – 37.*

16. Denied as stated. *Aetna did not make the conclusions set forth in this Statement; to the contrary, Aetna merely re-stated what Plaintiff told Aetna's appeal specialist during the call. See Aetna Statement ¶¶ 37; Aetna 227.*

17. Denied as stated. *Aetna obtained two independent physician reviews—one by Dr. Burstein and one by Dr. Brusch. Dr. Brusch attempted the peer to peer with Dr. McCall while Dr. Burstein conducted a peer to peer with Dr. Raymond and Plaintiff's speech therapist, Ms. Colosimo. Dr. McCall's office informed the physician reviewer that Dr. McCall refused to participate in such a call. See Aetna Statement at ¶ 41 – 42; 45.*

18. Disputed as stated. *While Aetna admits Dr. Raymond's office returned the reviewer's call, it was only to inform Aetna that Dr. Raymond last saw and treated Plaintiff in February 2013. See Defendants' Statement at ¶¶41 – 42.*

19. Disputed. *Aetna denies Plaintiff's characterization and interpretation of the document in the Administrative Record cited to in this Statement. Indeed, on January 21, 2013, Plaintiff self-reported worsening symptoms but Dr. McCall's*

4

*correspondence medical record for that visit noted Plaintiff communicated normally.* See Aetna 241.

20. Disputed as stated. Aetna disputes Plaintiff's selective interpretation of that March 28, 2013 office visit note from Dr. McCall. *Dr. McCall specifically found "[a]rticulation is clear and understandable. Speech fluent with ideas clearly conveyed for the most part. However, she will frequently word search and sometimes even slur her words during the interview."* See Aetna 462.

21. Disputed. Aetna disputes Plaintiff's Statement because it is an inaccurate restatement of Dr. Brusch's summary of the medical records reviewed. *Specifically, Dr. Brusch stated "over the months there was a waxing and waning of her complaints" and "there has really been no change in her complaints."* See Aetna 241.

22. Disputed. *Dr. Brusch did, in fact, review the medical records and in doing so, opined that the typical hallmarks for disability due to encephalitis were lacking in Plaintiff's medical records and that any such findings were based solely on Plaintiff's subjective reports and not the objective evidence in Plaintiff's medical records previously provided to Aetna.* See Defendants' Statement at ¶ 44.

23. Undisputed. See Defendants' Statement at ¶ 38; Aetna 274 – 305.

24. Disputed as stated. *The physical and mental demands of a supply technician as described in the job description included speech/hearing abilities,*

*mental alertness, planning/organizational skills and work under deadlines.* See Aetna 451.

25. Disputed. Aetna disputes Plaintiff's mischaracterization of the medical document in the Administrative Record. *Plaintiff attempts to boot-strap Plaintiff's symptoms into findings by the therapist. However, contrary to Plaintiff's self-reported symptoms, the speech therapist found Plaintiff had a increased ability for reading comprehension for "complex visual messages" and that Plaintiff "completed the auditory comprehension task" and "communicates adequately in most situations, however, mild deficits became apparent in distracting situations." See* Aetna 277.

26. Disputed. Defendants dispute the "To Whom It May Concern" letter is a "report" and dispute Dr. McCall's updated office visit notes support his opinions. *For example, in Dr. McCall's office notes for January through June 2013 note that Plaintiff's articulation was clear and understandable and that speech was fluent with ideas clearly conveyed (Aetna 284). Aetna notes that Dr. McCall's office visit notes for late March and late April 2013 were the only notes to identify speech issues which resolved after the second visit. (See* Aetna 279 – 303). *In fact, Aetna provided these same medical records to Dr. Brusch and Dr. Burstein and when these physician reviewers completed their reviews, copies of their reports were sent to Dr. McCall and requested he review and respond as*

6

*appropriate but Dr. McCall never bothered to respond or refute these physician reviewers' findings.*  See Defendants' Statement at ¶¶ 44 & 47.

27. Disputed.  *Plaintiff underwent a Neuropsychological Consultation in February 2013 by Dr. Raymond and Dr. Raymond issued a report in March 2013.  However, for reasons never explained, neither Plaintiff nor Dr. Raymond provided Aetna with Dr. Raymond's report until April 11, 2013.*  See Defendants' Statement at ¶ 24.  *Tellingly, Dr. Raymond summarized the testing noting that Plaintiff may not be as cognitively efficient since her encephalitis but further stated "in summary, the above enumerated findings, with a reasonable degree of neuropsychological certainty, are essentially unremarkable for noteworthy neurocognitive deficits, and in particular memory difficulty.  Thus, these findings stand in contrast with Ms. Marchgiani's subjective neurocognitive complaints."*  See Aetna 432.

             Respectfully submitted,

             */s/ Melissa M. Weber*
             Melissa Murphy Weber, Esquire
             ELLIOTT GREENLEAF
             925 Harvest Drive, Suite 300
             Blue Bell, PA  19422
             215-977-1026
             mmw@elliottgreenleaf.com

             *Counsel for Defendant*

Dated: February 17, 2015

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this date, the foregoing was filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document.

/s/ *Melissa Murphy Weber*
Melissa Murphy Weber, Esquire

DATED:    February 17, 2015